Christine LAYSON, Hisel Rule, Roger C. Womack, Robert Anderson, Robert Faul, David Zachary and William E. Parker, Appellants,

v.

Rose BRADY, Property Valuation Administrator, Rose Scott, County Court Clerk, Reese Smoot, Sheriff, Department of Revenue of the Commonwealth of Kentucky, the Commonwealth of Kentucky and Robert F. Stephens, Attorney General, Appellees.

Rose BRADY, Property Valuation Administrator, Rose Scott, County Court Clerk, Reese Smoot, Sheriff, Department of Revenue of the Commonwealth of Kentucky, the Commonwealth of Kentucky and Robert F. Stephens, Attorney, Cross-Appellants,

v.

Christine LAYSON, Hisel Rule, Roger C. Womack, Robert Anderson, Robert Faul, David Zachary and William E. Parker, Cross-Appellees.

Court of Appeals of Kentucky.

Opinion Rendered to be Published Oct. 27, 1978.

As Modified Dec. 8, 1978.

Rehearing Denied Jan. 5, 1979.

Joseph J. Leary, Frankfort, for appellants.

William S. Riley, Thomas A. Duke, Kentucky Dept. of Revenue, Frankfort, Joseph H. Conley, County Atty., Carlisle, Robert F. Stephens, Atty. Gen., Frankfort, for appellees.

Before GANT, HOGGE and HOWERTON, JJ.

HOWERTON, Judge.

This is an appeal and cross-appeal from a judgment of the Nicholas Circuit Court declaring the 1977 tax assessments invalid on all properties where the assessments were increased without written notice to the owner, and providing that "the certification of equalized assessment issued by the defendant, Department of Revenue, is hereby set aside and held for naught." The judgment further ordered the Kentucky Department of Revenue to make emergency assessments. The appellants and cross-appellees are property owners, and the appellees and cross-appellants include the assessor, the sheriff, and the Department of Revenue.

Both sides argue that the trial court had no authority to order emergency assessments, with which we agree. The appellants further contend that those property owners with voided assessments should forever be excused from paying taxes for the fiscal year affected by the judgment, which we find to be clearly wrong. The cross-appellants argue that the trial court erred by declaring any tax assessments completely void for lack of notice or on the basis that the reassessments were discriminatory. We agree with the cross-appellants and must therefore reverse the judgment of the trial court.

## FACTS

On April 4, 1977, Rose Brady was appointed Property Valuation Administrator, hereinafter referred to as PVA, for Nicholas County, Kentucky. Mrs. Brady was appointed to fill a vacancy in that office, and although she had had no previous experience in appraising real estate, she had taken and passed the examination required of persons seeking the office of PVA.

Mrs. Brady was informed by officials in the Department of Revenue that the total assessment of residential property in Nicholas County was too low to comply with court standards for fair cash value or to be certified as meeting those standards by the Department of Revenue. Mrs. Brady, thereupon, attempted to reassess residential property located in and adjacent to the City of Carlisle and in the Lake Carnico area of the county in order to increase the total residential assessments and to begin equalizing assessments within the county generally. The two areas were chosen for reassessment because they appeared to Mrs. Brady to be the most seriously underassessed and because of the compactness of those areas making them more accessible for a quick reassessment. The 1977 assessment program was behind schedule, and speed was of the essence.

Mrs. Brady requested the assistance of the Department of Revenue in making individual reassessments, and three men were dispatched to assist her in June 1977. The properties were evaluated by exterior visual inspection. One of the department representatives also made an examination of recent residential sales in Nicholas County. All properties in the two areas were examined, but not all assessments were increased.

Assessments on 632 parcels were increased. Mrs. Brady mailed notices of the increased assessments to 259 property owners by first-class mail. The only notices mailed were to those persons who had listed and valued their own property in the PVA office during January and February of 1977 and to the out-of-state and out-of-county taxpayers whose assessments were increased. The only notice given to other local property owners was accomplished by two notices in the local weekly newspaper published on July 13, 1977.

The tax rolls were opened for inspection as required by law, and approximately 300 property owners called or came into the PVA office to review their property tax assessments. One hundred eight (108) taxpayers filed appeals of their assessments to the Nicholas County Board of Assessment Appeals. Of the 108 appeals, 37 were taken by persons who had not received written notice of the increase in assessment on their property.

## VOIDING OF ASSESSMENTS

The primary questions to be resolved in this action are whether the trial court erred in voiding a portion of the county assessments for 1977, and if so, what remedy is necessary to correct the situation. As to the first part of the question, we have concluded that error was committed for three reasons. First, an irregularity does not vitiate an assessment. KRS 132.650. Secondly, the requirement of notice does not apply to property owners who appeal an assessment increase even though their knowledge of the increase was not obtained from notice by first-class mail. *Commonwealth ex rel. Reeves v. Elkhorn and Jellico Coal Co.*, 313 Ky. 764, 233 S.W.2d 508 (1950). Finally, there was no proof of discrimination in assessing the property which would

violate either the Kentucky or U. S. Constitutions.

■ Mrs. Brady attempted to follow KRS 132.450(4) and gave written notice of an increase in assessments to those property owners who listed the value of their properties in 1977. She also mailed written notices to the nonresident owners. KRS 132.450(4) provides:

> If the property valuation administrator assesses any property . . . at a greater value than that listed by the taxpayer or assesses any unlisted property, the property valuation administrator shall serve notice on the taxpayer of such action. The notice shall be given by first-class mail . . . . .

We interpret this section to require notification to a taxpayer for any increase in assessment. Even though a taxpayer has not appeared at the PVA office to list his own assessment for a current year, we conclude that the previously accepted assessment constitutes the continuing listing for or by the taxpayer. The assessment of unlisted property applies to previously unassessed or omitted property. See, KRS 132.310.

■ Notices were required, but failure to give the notices did not void the assessments. The assessments should have been permitted, and if any appeal or court action was then proper, it would have been reasonable to have followed the procedures established in KRS 133.120(5), which provides:

> No appeal under this section shall delay the collection or payment of any taxes based upon the assessment in controversy. *The taxpayer shall pay all state, county, and district taxes due on the valuation which he claims as true value as and when required by law*, and when the valuation is finally determined upon appeal, the court or the Kentucky board of tax appeals shall certify the valuation to the county court clerk and *the taxpayer shall be billed for any additional tax and six percent (6%) interest from the date when the tax would have become due if no appeal had been taken.* The provisions of KRS 134.390 shall apply to such tax bill. (Emphasis added.)

Of the 632 assessment increases, only 259 taxpayers were given written notice. There were 373 violations of the requirement. The trial court voided the total assessments for each of those properties and taxpayers. KRS 132.650 provides in no uncertain terms that ". . . the failure of the property valuation administrator . . to notify the taxpayer . . . of an increase of assessment . . . shall not make the assessment void." The only part of an assessment which may be voided for lack of notice is the amount of the increase. *Burnside Supply Co. v. Burnside Graded Common School*, 260 Ky. 482, 86 S.W.2d 160 (1935).

■ Of the 373 assessment increases with notice violations, only 336 should have been reassessed at the previous amounts. Thirty seven (37) taxpayers appeared before the appeals board. The law is also settled that a property owner who is not properly notified of an increased assessment, but who has actual notice and appeals to the proper review board may not find relief for lack of notice. *Reeves v. Elkhorn and Jellico Coal Co., supra.* The purpose of notice is to allow the taxpayer to be heard. When he appears and is heard, the rights, which notice is to protect, are preserved. It was therefore error for the trial court to disturb the increased assessments for the group of 37.

It is not clear from the judgment of the trial court what emphasis was given to the findings of discrimination in assessments, because the court voided only the assessments which were increased without written notice. The court specifically found, "that only residential property was assessed and not business property or farm property, which was definitely discriminatory." Another finding also provided that assessments "should be equalized as nearly as possible and made without discrimination." The specific facts are not necessarily erroneous, but any conclusion of invalidating discrimination was error.

■ Our Supreme Court, in *Standard Oil Co. v. Boone County Board of Supervisors*,

Ky., 562 S.W.2d 83 (1978), held that unequal treatment, under a law which is not itself unconstitutional, must amount to a conscious violation of the principle of uniformity before section 2 of the Kentucky Constitution or the equal protection clause of the fourteenth amendment of the U. S. Constitution will afford relief. There is certainly no evidence in the record which indicates a conscious violation of the principle of uniformity on the part of the PVA or the Department of Revenue. The PVA had reason to believe that residential property in Nicholas County was more seriously underassessed than either commercial or farm property. She first attempted to correct the assessments for residential property. The PVA stated in her affidavit that she intended to reassess the commercial and farm property as soon as she was able. Because of the time factor involved in assessing property, there must be some allowance given for lack of total and up-to-date uniformity of assessments, so long as the differences are not from an attempt to discriminate against any group. There is no indication that the PVA was violating KRS 132.690 or 132.700. Furthermore, it would be physically impossible for a local PVA to make on-sight inspections of all properties in a county within any year, considering the manpower and financial resources available for the task. We note in *Borders v. Cain*, Ky., 252 S.W.2d 903 (1952), that the assessor is not restricted to any particular method of evaluating property, except to assess the property at its fair cash value.

■ Mrs. Brady was apparently attempting to make or begin a systematic reassessment of all properties within Nicholas County. This court will not invalidate her assessments on the basis of any unfair discrimination.

## THE QUESTION OF EMERGENCY ASSESSMENTS

■ Based on the conclusions already reached in this opinion, it is apparent that any order pertaining to emergency assessments would have been unnecessary. We also agree with all parties, however, that such an order was improper. KRS 132.660 authorizes the Department of Revenue to order an emergency assessment. The court may not compel the department to order such an assessment without the showing of some abuse of discretion on the part of the department. *Reeves v. Jefferson County*, Ky., 245 S.W.2d 606 (1951). The record does not indicate (1) that there has been a failure to make a regular assessment, (2) that assessment records have been mutilated or lost, (3) that a complaint has been made by owners of not less than 10% of the taxable property in the taxing district, or (4) that an investigation by the department has disclosed the assessment of property as so grossly inequitable or fiscally infeasible that an emergency exists. It was clear error for the trial court to order the Department of Revenue to provide an emergency assessment.

## REMEDIES ON REMAND

The big problem is, where do we go from here. We are not fully aware of all the problems the judgment of the trial court has created, but we can be certain it has prevented the county government, the school district, the Commonwealth of Kentucky, and any other taxing jurisdiction in Nicholas County from collecting part of the ad valorem taxes due for the fiscal year beginning July 1, 1977. The judgment may have barred all ad valorem taxes on real property, since the judgment also invalidated the certification of equalized assessments issued by the Department of Revenue, which is required before a tax rate may be fixed. The local taxing authorities have had to borrow money to meet the financial requirements of necessary current operations.

Appellants argue that the taxes for 1977 are now forever barred, and that no reassessments should be permitted. To quote appellants' counsel, "[T]he assessing authorities and the taxing authorities failed utterly in their respective duties to assess property in Nicholas County for 1977 and now it is too late. The moving finger has written. Not all the piety or wit of the Department

of Revenue or the skill of its counsel may lure it back to cancel half a line. It is too late." It is with great restraint that we merely ignore such contentions.

Counsel for the cross-appellants offered several reasonable proposals, but they were suitable only as immediate remedies and not for the situation which is now a year or more old. It was suggested that (1) notices be sent to those whose assessments were increased, but who did not receive notice; (2) the tax rolls be reopened for inspection for a reasonable time after the notices are mailed, and (3) the Board of Assessment Appeals be reopened to hear appeals from those who object to the new assessment after notification.

This action was a class action involving all property owners, and the judgment of the trial court also singled out those owners receiving notice of an increase as a separate class. We must therefore provide for all properties when prescribing the required remedy for this situation.

■ The assessments for all unaffected properties should be valued as previously assessed. The assessments for all properties with increased assessment whose owners did not receive notice and who took no appeal should be valued as assessed before the reassessment increase. The increase in assessment for 1977 was properly voided as to the property owners in that class. The increased assessments on all other properties where notice was given or an appeal was taken must be reinstated, subject to any relief the individual owners obtained through the tax appeal process. The total assessments must then be forthwith certified as required by law, and the tax bills must be issued for 1977 according to the statutory provisions for omitted property and bills in chapters 132, 133, and 134 of the Kentucky Revised Statutes.

In the event the assessing and billing process for 1978 or later years has been affected by the judgment, the statutory procedures for omitted property and omitted tax bills should be followed.

The judgment of the trial court is reversed, and this action is remanded for further proceedings consistent with this opinion.

All concur.