# Richard and Lorraine Alexander v. Town of Barton

[565 A.2d 1294]

No. 87-477

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 9, 1989

Motion for Reargument Denied July 19, 1989

*Gensburg Axelrod & Adler,* St. Johnsbury, for Plaintiffs-Appellees.

*May, Davies & Franco,* Barton, for Defendant-Appellant.

**Dooley, J.** The Town of Barton (Town) appeals from an adverse decision of the State Board of Appraisers (Board). The Board found that the Town's reappraisal method violates chapter I, article 9 of the Vermont Constitution. We reverse and remand.

## I. *Facts*

Lorraine and Richard Alexander own a camp on the east shore of Crystal Lake in Barton. The Alexanders' property, along with all other vacation properties of six acres or less, was reappraised on April 1, 1987. No other classes of property were reappraised. The reappraisal resulted in increasing the listed value of the Alexanders' property to $19,200 from $15,200.

The Alexanders appealed the appraisal to the Board of Listers pursuant to 32 V.S.A. § 4221, but no change was made in the assessment. They then appealed to the Board of Civil Authority (BCA) pursuant to 32 V.S.A. § 4404(a). The BCA increased the appraisal made by the listers to $23,500 because it found that the listers did not use the proper depreciation factor. The Alexanders chose to appeal the BCA decision to the Director of the Division of Property Valuation and Review pursuant to 32 V.S.A. § 4461(a), who referred the appeal to a State Board of Appraisers assembled for the case. See 32 V.S.A. § 4465.

Before the Board, the Alexanders challenged the selective reappraisal, arguing that it violated chapter I, article 9 of the Vermont Constitution. They did not contend that their property was not listed at fair market value; in fact, they admitted this. In support of its valuation, the Town offered evidence of its "rolling reappraisal" method. Every two years (now every year), the Town receives a report from the State Tax Department showing the extent to which classes of property in the Town are being assessed at less than fair market value. Based on this report, the Town then reassesses the class of property determined to be the most in need—i.e.,

where on average the listed value of properties within the class is the lowest percentage of fair market value. For the tax year 1987, the class selected was "vacation (V-1)" for which the state study showed that listed values were in the aggregate only at 51.70% of fair market value.* For the following year, the class selected was "commercial" because the state study showed that such properties were in the aggregate listed at only 53.33% of fair market value.

The Board, pursuant to 32 V.S.A. §§ 4461(a) and 4467, heard the Alexanders' appeal and found that:

> when a town reappraises some categories of property for a certain Grand List date and does not reappraise all other properties for the same date, it does not meet the requirement [of Vt. Const., ch. I, art. 9] that all property in a town be assessed at a uniform rate.

The Board concluded that:

> it would be inappropriate to place [the Alexanders' property] in the Grand List in accordance with [32 V.S.A. § 4467] at a value corresponding to comparable properties as this would only continue the inequity between Subject and properties in other classification categories that were not reappraised as of April 1, 1987. Because this assessment was caused by an error in reappraisal procedure, the [Alexanders'] property should be set in the Grand List at the April 1, 1986 value as provided in [32 V.S.A. § 4404(c)].

It is from this decision that the Town of Barton appeals.

## II. *Issues*

The Town makes four arguments on appeal: (1) the Board lacked jurisdiction to rule on the constitutionality of the method used by the Town to reappraise property; (2) the Board erred in failing to dispose of this case before reaching the question of the constitutionality of the Town's appraisal methods; (3) the Board committed error in applying chapter

---

* The state study uses thirteen categories of property. Aggregate listed values in the Town varied from a low of 51.70% for vacation (V-1) properties to 95.84% for mobile homes. In the aggregate, properties in the Town were listed at 75.75% of fair market value.

I, article 9 of the Vermont Constitution to this case; and (4) the Board did not have the authority to set the value of the Alexanders' property under 32 V.S.A. § 4404. Although we find that the Board's order goes beyond its authority under its governing statute, 32 V.S.A. § 4467, we reach the merits and conclude that the Town's appraisal procedure meets state and federal constitutional requirements.

## III. *The Board's Jurisdiction*

■ The Town's argument that the Board lacks the power to adjudicate constitutional questions goes too far. Our recent case of *Westover v. Village of Barton Electric Dept.*, 149 Vt. 356, 543 A.2d 698 (1988), holds that administrative agencies have no power to determine the constitutional validity of statutes. *Id.* at 359, 543 A.2d at 699. This case, however, and others like it, put the Board in the position of judging the constitutionality of a listing practice pursuant to a statute, 32 V.S.A. § 4467, that specifically requires the Board to "take into account" the applicable provisions of the United States and Vermont Constitutions. Professor Davis notes that a

> fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation. Only the courts have authority to take action which runs counter to the expressed will of the legislative body.

3 K. Davis, Administrative Law Treatise § 20.04, at 74 (1958); see also K. Davis, 1982 Supplement to Administrative Law Treatise § 20.14, at 287 (1982) (agencies must often "locate the boundaries of statutory requirements by taking into account ideas based on constitutional limitations"). Here, the Legislature clearly intended that the Board would adjudicate

constitutional questions in determining the validity of town appraisals.

Although it goes too far to say that the Board cannot adjudicate constitutional questions, there are specific statutory limits on the Board's power that restrict its ability to act in this case. A historical perspective is helpful to understanding those limits.

Prior to 1970, property tax appeals went to county boards of appraisers with limited powers. See V.S. 1947, §§ 786–787. In a line of cases commencing with *In re Town of Essex*, 125 Vt. 170, 173, 212 A.2d 623, 627 (1965), this Court emphasized the narrowness of the power of the county boards. See also *Town of Pawlet v. Witherspoon*, 128 Vt. 120, 128–29, 259 A.2d 15, 20 (1969); *In re Town of Mendon*, 127 Vt. 502, 506, 253 A.2d 139, 141 (1969); *In re Mallary*, 127 Vt. 412, 418, 250 A.2d 837, 840–41 (1969). *In re Town of Essex* established the rule that the boards could look only at whether the property involved in the appeal was appraised at fair market value. Thus, it was not within the boards' jurisdiction to look at whether other properties in the town were appraised at less than fair market value. See 125 Vt. at 173, 212 A.2d at 627. The rule was stated in *In re Mallary*, 127 Vt. at 418, 250 A.2d at 840–41, as follows:

> The appeal to the county board brings to them for consideration only the property of the taxpayer whose list is involved and described in the appeal.
>
> [T]he question before the county board did not concern the question of the uniformity of property appraisals within the entire Town of Fairlee.... [W]hether there is uniformity in taxes or property appraisals as required by law is not a subject matter within the jurisdiction, or for the determination, of the county board of appraisers. Instead, it is for the courts to decide in appropriate proceedings.

(Citations omitted.) The opinion did recognize that the board must consider and make comparisons with other similar property in the general area to determine the validity of the appraisal before it. *Id.* at 418, 250 A.2d at 841. In *In re Town of Mendon*, 127 Vt. at 506, 253 A.2d at 141, and *Town of Pawlet v. Witherspoon*, 128 Vt. at 128–29, 259 A.2d at 20, we

reemphasized that the question of unequal taxation in a town could not be raised in tax appeals before the boards.

It is apparent from the above line of cases that limitations in the tax appeal process imposed by this Court's decisions made the process unworkable. The problem in most of the cases was that towns were generally not appraising at fair market value. Thus, as was specifically held in *In re Town of Mendon,* the board could set a new fair market value but could not reduce it to reflect the actual listing percentages being used in the town. It was possible, if not likely, that a taxpayer who prevailed before the county board in establishing a desirable fair market value for the property would actually pay a higher tax because he would be listed at 100% of fair market value when other properties were listed at only a percentage of fair market value.

■ To respond at least in part to this deficiency in the property tax appeal process, the Legislature reformed it by adopting 32 V.S.A. § 4467. This statute provides:

> Upon the appeal to the state board of appraisers or the court, the board or court shall proceed de novo and determine the correct valuation of the property as promptly as practicable. The state board or court shall take into account the requirements of law as to valuation, and the provisions of Chapter I, Article 9 of the Constitution of Vermont and the 14th Amendment to the Constitution of the United States. If the board or court finds that the listed value of the property subject to appeal does not correspond to the listed value of comparable properties within the town, the board or court shall set said property in the list at a corresponding value....

The decisions of this Court make clear that the statute requires the State Board of Appraisers to look at both fair market value and "listed" value of comparable properties so that the valuation set by the Board can be "equalized"—that is, reduced from fair market value to listed value by the percentage actually used for comparable properties in the town. See *Kachadorian v. Town of Woodstock,* 144 Vt. 348, 350–51, 477 A.2d 965, 967 (1984). In this process, the Board is specifically commanded to take into account the law on valuation and the

applicable provisions of the United States and Vermont Constitutions.

When viewed in historical perspective, the change in the tax appeal statute brought about a limited procedural reform. It was clearly intended to overrule cases where the county boards were prohibited from looking at actual listings in the town to show that no property was listed at fair market value. But it was limited by the use of the term "comparables." Except in the rare case where there are no comparables in the town because of the unique nature of the property involved, see *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 509–10, 367 A.2d 1363, 1370–71 (1976), the statute limits the Board to looking at properties comparable to that under consideration in determining whether there are differences between listed and fair market values. The exception of *New England Power Co.*, which allows the Board to look at all properties when the property before it is unique, is justified by the need to give unique property owners some recourse for unfair listing. See *id.* at 509, 367 A.2d at 1370.

■ In this case, the Board looked at the listed values of properties which were not comparable to the property before it. Indeed, the taxpayer agreed that his property had been appraised and listed in the same way as all comparable properties and his comparison was to the appraisal (or non-appraisal) and listing of properties in other classes. His comparison then was similar to that attempted in *In re Mallary*, discussed above. While that comparison was not possible under the former appeal statute, see *Mallary*, 127 Vt. at 418, 250 A.2d at 840–41, neither did the current statute broaden the role of the administrative review process in this regard, because § 4467 specifically limits comparisons to "comparable properties" within the town. Thus, the Board committed error in this case in looking beyond the comparables.

While we could fully dispose of this case on that error made alone, we note that we have routinely reached further issues in property tax appeals, especially where they can recur. See, e.g., *Shetland Properties, Inc. v. Town of Poultney*, 145 Vt. 189, 193, 484 A.2d 929, 932 (1984). The challenge to the Town's appraisal method could be brought before the superior court

in another case and would likely reach this Court. We presently have a record before us on which to judge the appraisal system although that record is sparse. Accordingly, we reach the issue of the validity of the "rolling reappraisal" method used by the Town to the extent the current record allows.

## IV. *Validity of the Appraisal Method*

There are two arguments that the "rolling reappraisal" method is invalid: (1) it is inconsistent with the statutory obligations imposed on towns as to the listing of real property; and (2) it is inconsistent with the proportional contribution clause of the Vermont Constitution. Although the Board relied upon the Vermont Constitution, we begin by looking at the statutes and then analyze the actions of the Town. We find that under either the statutes or the constitution the assessment method used by the Town was valid.

Our law on listing property for property tax purposes is clear. Under 32 V.S.A. § 3482, it is the duty of the town listers to set property in the grand list at 1% of "listed value" as of April 1 of the year involved. The listed value of property is equal to 100% of appraised value which, in turn, is equal to fair market value. 32 V.S.A. § 3481(1), (2). Thus, the obligation of the listers is to list all property in the town at fair market value as of April 1. Once all the property is listed, taxes are "uniformly assessed" on the list unless otherwise provided by law. See 32 V.S.A. § 4601.

There is, however, a gap between the theory of the listers' responsibility and the implementation. As our decisions reflect, listing at updated fair market value each year, even if a theoretical possibility, has proved to be unachievable. Thus, the duty imposed upon the Board is to "equalize," that is to set listed values at an amount that will "correspond to the listed value of comparable properties within the town." 32 V.S.A. § 4467; *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 302, 376 A.2d 24, 27 (1977); *International Paper Co. v. Town of Winhall*, 133 Vt. 385, 387–88, 340 A.2d 42, 44–45 (1975). This is a two-step process that requires first a determination of fair market value and, second, the determination of listed value from an equalization ratio, calculated as the sum of the listed values of the comparables divided by the sum of the fair

market values of these properties. See *Kachadorian v. Town of Woodstock*, 144 Vt. at 350–51, 477 A.2d at 967. The listed value of the property before the Board is the fair market value times the equalization ratio. The equalization ratio is an artificial device, theoretically unnecessary where all listing is at fair market value (the ratio then is 1 to 1), created to ensure uniformity of taxation among comparable properties, even as we recognize that uniformity does not actually exist among noncomparable properties.

The Legislature has in other ways recognized that the theoretical command of the listing statutes is not implemented fully. For example, 16 V.S.A. § 3475(a) establishes a state-aid-to-education penalty for towns that fail to keep appraisals current with fair market value. However, the statute allows aggregate listed values for a town to fall to 80% of aggregate fair market values for the town before any penalty is imposed. See 16 V.S.A. § 3475(a)(1). Even with the allowed 20% deviation, the penalty can be waived if the town moves towards reappraisal. See 16 V.S.A. § 3475(c).

■ Neither the Board nor the taxpayers have pointed us to anything in the statutory scheme that makes the Town's action unlawful beyond the obvious point that the Town has not annually appraised all property at fair market value—a characteristic it apparently shares with virtually all other towns in Vermont, at least those which have not reappraised in the last year. As this Court pointed out in *In re Town of Essex*, 125 Vt. at 172, 212 A.2d at 626, "[t]here is no statute which requires that property within a municipality shall be appraised uniformly for tax purposes. The only requirement ... is that the listers shall appraise ... property at its fair market value." Where the Legislature has tacitly accepted that listing below 100% of fair market value will go on, the obligation to appraise at fair market value does not equal an obligation to appraise uniformly. We think the statutes clearly intended the Board to equalize inequality in appraisals among "comparables" and not across different classes of property. *Town of Walden v. Bucknam*, 135 Vt. 326, 327–28, 376 A.2d 761, 763 (1977). We find no statutory violation that warrants relief for the taxpayers in this case.

■ The taxpayers' main argument, which the Board accepted, was that the Town's action here violated chapter I, article 9 of the Vermont Constitution, the proportional contribution clause. This provision requires each member of society to "contribute his proportion towards the expence [sic] of" government. In a taxation context, the proportional contribution clause puts no greater restrictions on governmental action than the equal protection clause of the Fourteenth Amendment to the United States Constitution:

> The constitutional requirement of proportional contributions for the support of the government was not intended to restrict the State to methods of taxation that operate equally upon all its inhabitants. The limitation imposed by our Constitution does not forbid any classification of property for the purpose of taxation, or the adoption of any scheme of taxation, provided that they do not offend the federal Constitution, the equality clause in the one and the uniform clause in the other being in effect the same for such purposes.

*Clark v. City of Burlington*, 101 Vt. 391, 405, 143 A. 677, 682–83 (1928) (citations omitted). Thus, the test of validity of governmental action under the proportional contribution clause must be the rational basis test used for federal equal protection analysis. See *Stoneman v. Vergennes Union High School Dist. #5*, 139 Vt. 50, 56, 421 A.2d 1307, 1310 (1980). We recently described this test as follows:

> Under this test, distinctions will be found unconstitutional only if similar persons are treated differently on "wholly arbitrary and capricious grounds." If there is a rational basis for the distinctions, serving a legitimate policy objective, there is no equal protection violation. In applying this standard, we must look at any of the purposes that are conceivably behind the statute.

*Smith v. Town of St. Johnsbury*, 150 Vt. 351, 357, 554 A.2d 233, 238 (1988) (citations omitted).

The Town argues that its actions have a rational basis— keeping appraisals as current as possible within the resources available by attacking the worst underassessment problem

areas. We agree that this is a rational basis that serves a legitimate purpose and that the properties which are compared here are in fact dissimilar. Thus, there is a real, unfeigned difference between persons owning different classes of property, and the decision to attack the class with the greatest degree of underassessment is reasonable. In reaching this conclusion, we do not rule out the possibility that a more detailed showing of impact of the Town's practice over time might make out a constitutional violation. On this record, however, there is no violation of the proportional contribution clause.

The justification that the Town advances here is similar to that asserted in *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350 (1918), a federal equal protection case. There, the town raised the assessment of a particular mine, pursuant to state statute, but ran out of time and did not complete reassessments on other similar properties. The taxpayer argued that lack of time to make assessments could not justify the discrimination. The United States Supreme Court rejected the argument because it found no "purpose or design to discriminate. [The town's] action is not incompatible with an honest effort in new and difficult circumstances to adopt valuations not relatively unjust or unequal." *Id.* at 353.

Numerous decisions from other states have applied *Sunday Lake Iron Co.* to "cyclical" reappraisal cases, the situation present here. The most instructive are the decisions of the Supreme Court of Washington in *Carkonen v. Williams*, 76 Wash. 2d 617, 458 P.2d 280 (1969), and *Dore v. Kinnear*, 79 Wash. 2d 755, 489 P.2d 898 (1971). In *Carkonen*, the court upheld a cyclical reappraisal policy under which the assessors would reach all of the property in the county every four years. The court found:

> The evidence indicates quite clearly that, to the best of their ability, and with their limited staffs, the assessors involved were honestly endeavoring to pursue a systematic nondiscriminatory cyclical approach to revaluation.... The sheer physical problem of annually inspecting the units of property involved, coupled with the staff and budgetary allocations required to accomplish such, lends wisdom to the legislative act authorizing and directing a

cyclical approach, and virtually lays to rest any viable claim to intentional discrimination inhering in the system. 76 Wash. 2d at 632, 458 P.2d at 289. The court held that under *Sunday Lake Iron Co.*, as long as a cyclical appraisal system is "carried out systematically and without intentional discrimination," there is no constitutional violation. *Id.* at 633, 458 P.2d at 290.

In *Dore v. Kinnear*, the court faced a claim of intentional discrimination in the same county as that involved in *Carkonen*. The four-year cycle had broken down, and the assessor reached only about six percent of the parcels in a year. The court held that the appraisal system could no longer be upheld because the six percent of the properties were subject to "gross discrimination" of higher appraisals for a longer period of time during the cycle. 79 Wash. 2d at 763, 489 P.2d at 903.

Decisions from other states have recognized the distinction between systematic reappraisal and intentional discrimination and almost invariably have upheld the cyclical reappraisal against a challenge under the state or federal constitution. See *Hillock v. Bade*, 22 Ariz. App. 46, 53, 523 P.2d 97, 104 (1974) (the issue is whether a cyclical plan "would constitute intentional and arbitrary discrimination"; court must look to a number of factors, including discrimination caused if cyclical plan not initiated), *aff'd*, 111 Ariz. 585, 535 P.2d 1302 (1975); *Probst v. City of New Orleans*, 337 So. 2d 1081, 1084 (La. 1976) (reappraisal conducted over a period of years and targeting certain properties where property values increased greatly is valid), *cert. denied*, 430 U.S. 916 (1977); *May Dep't Stores Co. v. State Tax Comm'n*, 308 S.W.2d 748, 760 (Mo. 1958) (municipality could single out commercial areas for reappraisal as part of plan to reach uniformity over time where complete revaluation was impossible immediately); *Skinner v. New Mexico State Tax Comm'n*, 66 N.M. 221, 225, 345 P.2d 750, 753 (1959) (cyclical reappraisal at the rate of 20% of the properties per year valid absent a showing of specific discrimination or fraud).

We do not believe our decision is undercut by the United States Supreme Court's opinion in *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 109 S. Ct. 633 (1989), a

case decided after this case was briefed and argued in this Court. In *Allegheny Pittsburgh Coal Co.*, the Court found a violation of equal protection requirements where the taxing authority valued the plaintiff's property on the basis of its purchase price but made only minor modifications in the assessments of lands which had not been recently sold. The system produced gross disparities between the values assigned to lands recently sold and those assigned to otherwise comparable surrounding lands. One plaintiff was taxed at a rate approximately thirty-five times the rate applied to owners of comparables. In that county, it would require over 500 years to equalize assessments.

For three reasons, we believe *Allegheny Pittsburgh Coal Co.* is distinguishable. First, it dealt with discrimination between comparable properties, not discrimination between classes of property. In fact, it recognized the power to divide property into classes and assign to each class a different tax burden as long as the divisions and burdens are reasonable. 488 U.S. at 344, 109 S. Ct. at 638. Second, it dealt with a system that acted to perpetuate discrimination rather than eliminating it. Third, the disparities were far greater in magnitude than those present here and were essentially permanent.

■ We cannot say that there is intentional discrimination in this case. While the plan adopted by the Town may never reappraise all property, it is aimed at the property with the greatest discrepancy between fair market value and listed value. Thus, it is entirely possible, even likely, that the plan adopted by the Town is fairer overall than a cyclical plan that did a certain percentage of the property each year. Of course, a more complete record may show impacts and unfairness not shown on the limited record before us.

*Reversed and remanded to the State Board of Appraisers to determine the fair market and listed value of taxpayers' property.*

## On Motion for Reargument

*Motion for reargument denied. The mandate is amended to read "Reversed and remanded to the State Board of Appraisers for proceedings not inconsistent with this opinion."*