REVENUE CABINET, COMMONWEALTH OF KENTUCKY; Kim Burse, Secretary of the Revenue Cabinet, Commonwealth of Kentucky; and Jack T. Parrent, Franklin County Property Valuation Administrator, Appellants,

v.

Joseph J. LEARY, Appellee.

Kim BURSE, Secretary of the Revenue Cabinet, Commonwealth of Kentucky; and Jack T. Parrent, Franklin County Property Valuation Administrator, Appellants,

v.

Joseph J. LEARY, Appellee.

Nos. 92–CA–000294–MR,
93–CA–000374–MR.

Court of Appeals of Kentucky.

Feb. 4, 1994.

Discretionary Review Denied by Supreme Court Aug. 24, 1994.

Douglas M. Dowell, Debra H. Eucker, Frankfort, for appellants.

Joseph J. Leary, Frankfort, for appellee.

Before HUDDLESTON, JOHNSTONE and STUMBO[1], JJ.

HUDDLESTON, Judge.

As directed by Ky.Rev.Stat. (KRS) 132.-690, the Franklin County Property Valuation Administrator undertook to revalue the 17,-576 separate properties within the county so as to assess each at its fair market value. Since the statute requires that each property be physically examined not less than once every four years, the PVA and his staff divided the county into four sections and undertook to inspect the properties in one section each year.

Joseph J. Leary, an owner of property in the second section subject to physical examination by the PVA, brought a declaratory judgment action in Franklin Circuit Court according to KRS Chapter 418 to challenge the quadrennial revaluation procedure. He argued, and the lower court agreed, that the so-called quadrennial plan adopted by the PVA violates Sections 2, 171 and 172 of the Constitution of the Commonwealth of Kentucky, and is in conflict with KRS 132.450.

Franklin Circuit Court enjoined the PVA, as well as the Revenue Cabinet, to comply with the constitutional provisions cited above and, specifically, with that portion of KRS 132.450 which requires that "the property of one (1) person shall not be assessed willfully or intentionally at a lower or higher relative value than the same class of property of another, and any grossly discriminatory eval-

uation shall be construed as an intentional discrimination...." In a subsequent order, the circuit court determined that all affected taxpayers—that is, all whose property had been physically examined and who had their assessments raised as a result—be granted a tax refund equal to the difference between the taxes paid in 1990 and in 1991 and the taxes paid in 1989. This ruling was made in spite the fact that this action was brought by Leary on his own behalf, and not as representative of a class of taxpayers. We believe that the circuit court erred when it made these rulings.

KRS 132.690 provides that:

Each parcel of taxable real property or interest therein subject to assessment by the [PVA] shall be revalued during each year of each term of office by the [PVA] at its fair cash value in accordance with standards prescribed by the Revenue Cabinet and shall be *physically examined* no less than once every four (4) years by the [PVA] or his assessing personnel.... (Emphasis supplied.)

Acting pursuant to this statute, the Franklin County PVA submitted to the Kentucky Revenue Cabinet a plan for the systematic physical examination of all real property located in the county over a four-year period. The PVA proposed to divide Franklin County into four geographic sections. The property located in each section would be physically examined and revalued in its scheduled year as an aid in determining its fair cash value. All residential and commercial property would be examined in the first three years, while agricultural property was to be examined during the fourth year. The plan was approved and implemented.

Joseph J. Leary owned property located in plan section two of the county. The PVA physically examined Leary's property in 1991, the second year of the plan, and increased its assessed value. In his declaratory judgment action, Leary argued that other properties not included in sections one and two would not be revalued and assessed by the PVA until years three and four of the plan, thus violating the constitutional re-

1. Judge Stumbo concurred in this opinion prior to her election to the Kentucky Supreme Court.

quirements of equality and uniformity of assessment.

As above noted, Leary relied on three sections of the Kentucky Constitution, § 2, § 171 and § 172. The first, § 2, declares, in relevant part, that absolute and arbitrary power over the property of freemen exists nowhere in a republic. The second, § 171, provides, in pertinent part, that taxes "shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax...." The third, § 172, provides, also in relevant part, that "[a]ll property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale...."

After the trial court granted Leary's motion for summary judgment and vacated the 1990 and 1991 assessments made for properties located in sections one and two, the Revenue Cabinet, through its Secretary, and the PVA appealed to this Court.

While the precise issue raised in this case has not been addressed by this Court or by the Kentucky Supreme Court, there are several decisions from other states that are instructive. Many of them are collected in an annotation appearing in 76 A.L.R.2d 1077 entitled "Real-estate tax equalization, reassessment, or revaluation program commenced but not completed within the year, as violative of constitutional provisions requiring equal and uniform taxation." As the author of the annotation observes:

> The cases disclose a strong inclination to disallow the claim that a violation of constitutional right to equality and uniformity in taxation results from inequalities and maladjustments consequent on the inability of assessors and reviewing and equalizing officers to complete within a single tax year a projected program for the reassessment of the lands of a given county or other tax district.

76 A.L.R.2d at 1077. As a matter of fact, the annotation's author continues:

> Thus far all claims of violation of constitutional right by reason of the element of time above indicated have been rejected, including those made in cases in which the

result of temporary non-completion of the program was to cause some lands of the tax area to be for the time being assessed at new and higher valuations, ... while other lands not yet reached were assessed at old and glaringly contrasting values.

*Id.*

Illustrative of the cases from other states which treat the issue at hand is *Hamilton v. Adkins,* 250 Ala. 557, 35 So.2d 183 (1948), *cert. den.,* 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407 (1948). There, as in the case before us for decision, a plan to reassess, review and equalize all real estate within a county was adopted. Under the plan, the county was divided into four districts, with one district to be reassessed each year. The practical reason for implementing the planned reassessment over four years was that the assessor lacked the staff and resources to complete the job sooner. Upon consideration of constitutional provisions similar to Kentucky's, the Alabama Supreme Court rejected a challenge to the plan. The court held that to establish the right to injunctive relief under the constitutional provisions relied on, including the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, there must be established a systematic and intentional discrimination. The court's view was that there could be no design or intention to discriminate arising from the fact that the reappraisal was not to be accomplished in less time than the assessor and his staff were physically able to do it.

In a similar case, the Maryland Supreme Court upheld, against state and federal constitutional challenges, a method of assessment prescribed by statute whereby a county was divided into five districts so that all assessments of the county would be reviewed during a five-year period. The court specifically held that the assessment procedure did not violate the Fourteenth Amendment's equal protection clause "provided that there is no intentional and arbitrary discrimination." *Rogan v. County Com'rs. of Calvert County,* 194 Md. 299, 310, 71 A.2d 47, 51 (1950).

Like holdings may be found in *Carkonen v. Williams,* 76 Wash.2d 617, 458 P.2d 280, 290 (1969); *Sator v. Washington Dept. of Revenue,* 89 Wash.2d 338, 572 P.2d 1094, 1097 (1977); *Nuttall v. Leffingwell,* 193 Colo. 137, 563 P.2d 356, 359 (1977), and cases cited therein on p. 359; *Brunken Toyota, Inc. v. City of Lubbock,* 558 S.W.2d 523, 527 (Texas Civ.App.1977); *Alexander v. Barton,* 152 Vt. 148, 565 A.2d 1294, 1299 (1989); *Probst v. City of New Orleans,* 337 So.2d 1081, 1084 (La.1976); *Brammer v. Latah Co. Assessor,* 102 Idaho 437, 631 P.2d 219 (1981), citing *Justus v. State Board of Equalization,* 101 Idaho 743, 620 P.2d 777 (1980); and *Recanzone v. Nevada Tax Comm.,* 92 Nev. 302, 550 P.2d 401, 404 (1976), and cases cited therein on 550 P.2d at p. 404. Indeed we have not been cited to, nor have we located, a contrary decision.

Virtually all of the courts that have upheld cyclical reassessments of real property subject to taxation have cautioned that the system must be administered in a systematic, nondiscriminatory manner. And most are agreed that

> ... in evaluating whether a plan is arbitrary or intentionally discriminatory all relevant circumstances should be considered, including the limitations of time and staff, the nature and extent of existing inequities in the tax rolls, the extent to which such existing inequities are rectified by the plan, the amount and duration of the temporary disparities under the plan and whether non-implementation of the plan would perpetuate existing inequities.

*Brammer v. Latah Co. Assessor, supra,* 102 Idaho at 438, 631 P.2d at 220.

The record in the case before us shows that the Franklin County quadrennial plan was neither designed nor implemented with discriminatory intent. The first two geographic sections contain the most densely populated areas of Franklin County. The PVA testified that the greater number of parcels in these districts could be physically examined more efficiently due to the shorter travel time between properties. As a result, the PVA examined most of the residential and commercial properties in the first two years. Agricultural properties were reserved for the last year because their value tended to remain more stable than that of residential and commercial property.

Neither did the PVA limit the revaluation of property in 1990 or 1991 to that section of the county being physically examined. Changes in values were made throughout the county based upon whatever information the PVA received from deeds, building permits and estate settlements. The PVA also considered information received about changes in land use, and made adjustments in assessments based upon information from taxpayer listings or reports made pursuant to KRS 132.220 and KRS 132.230. When the PVA was presented with sufficient information upon which to base a change in value, a reassessment was made. If the PVA could not obtain updated information about a certain property's individual characteristics other than in the year in which it was scheduled to be physically examined, it was not revalued.

The record is devoid of any evidence of intentional discrimination by the PVA. His inability to physically examine all real property in Franklin county within a one-year period does not support such a finding. While a PVA is required to consider the individual characteristics of each parcel of real property he assesses to accurately determine its fair cash value, *Dolan v. Land,* Ky., 667 S.W.2d 684, 687 (1984), this Court has recognized that it is "physically impossible for a local PVA to make on-site inspections of all properties in a county within any year...." *Layson v. Brady,* Ky.App., 576 S.W.2d 223, 227 (1978).

In 1988, the General Assembly amended KRS 132.690 to require a physical examination of real property in each county as an aid in its reassessment. The Franklin County quadrennial plan is a result of that legislation. It provides a systematic method for achieving a more uniform valuation of property at its fair cash value as required by the Kentucky Constitution. Leary, however, argues that unconstitutional inequalities in assessment result because not all property is revalued in the same year.

In *Eminence Distillery Co. v. Henry County Bd. of Supervisors,* 178 Ky. 811, 200 S.W. 347, 350 (1918), this state's highest court said that "[w]e do not pretend that an absolute equality is essential to the validity of a tax assessment. The experience of all time has conclusively demonstrated that absolute equality cannot be attained." And in *Layson v. Brady, supra,* 576 S.W.2d at 227, this Court recognized that "[b]ecause of the time factor involved in assessing property, there must be some allowance given for lack of total and up-to-date uniformity of assessments, so long as the differences are not from an attempt to discriminate against any group." Furthermore, in *Standard Oil Co. v. Boone County Bd. of Supervisors,* Ky., 562 S.W.2d 83, 84 (1978), the Kentucky Supreme Court said that "the Constitution does not demand perfection. It is only the obvious and flagrant case that warrants relief...." The Court went on to say that to invoke Section 2 of Kentucky's Constitution against the "unfair administration of a law that is not itself unconstitutional[,] the unequal treatment must amount to a conscious violation of the principle of uniformity." *Id.* at 85.

In summary, the Franklin County quadrennial plan complies with all relevant statutory requirements, and does not violate Sections 2, 171 or 172 of the Kentucky Constitution. Accordingly, the judgment of Franklin Circuit Court is reversed and this case is remanded with directions to enter judgment upholding the challenged plan.

All concur.