2005 VT 27

### Robert WILLIAMS and Carol Williams, et al. v. TOWN OF LYNDON

[872 A.2d 341]

No. 03-335

¶ 1. March 11, 2005. Plaintiffs, comprised of nineteen separate property owners in the Town of Lyndon, appeal from a superior court decision affirming their property tax assessments for the year 2000 based on a reappraisal of properties located within a specific geographic area of the Town known as the Broad Street district. Plaintiffs contend: (1) the selective reassessment violated the Proportional Contribution Clause of the Vermont Constitution; (2) the trial court erred in failing to make findings concerning the values of properties outside the district; and (3) the trial court's finding that several properties were arbitrarily excluded from the reappraisal requires invalidation of the entire reassessment district. For the reasons set forth below, we affirm.

¶ 2. The factual and procedural background to this dispute may be summarized as follows. The Town's last townwide reappraisal occurred in 1982. Since then, it has re-indexed, or increased the value of all property, by fifteen percent on two occasions, in 1987 and 1992. Plans for a new town-wide reappraisal have been frustrated by a lack of sufficient funds and manpower.

¶ 3. Each year, the Town receives reports from the Tax Department's Division of Property Valuation indicating the Town's common level of appraisal, or percentage deviation between the price of properties sold the previous year and the grand list values assigned to those properties. The Department also reports the town's coefficient of dispersion (COD), which measures the degree to which the ratio of listed to fair market value of individual properties deviates from the median ratio for the area. When a town's common level of appraisal drops below 80% or its COD exceeds 20, it is required to conduct a town-wide reappraisal. 32 V.S.A. § 4041a(b).

¶ 4. In 2000, the Town's overall common level of appraisal was approximately 89%, and its COD was approximately 17, both within the statutory limits. Data from the past several years revealed, however, that sales of commercial properties located along a one-mile stretch of U.S. Route 5 south of Lyndonville village, known locally as Broad Street, yielded purchase prices vastly in excess of their grand list value. The common level of appraisal for these properties — approximately 13% — differed dramatically from that of the Town as a whole. All of the properties in question are located along a specific stretch of Broad Street between the Interstate 91 interchange to

the south and the second set of railroad tracks to the north. The trial court found that this area, known as the Broad Street district, is unique in many respects. Economically, it is an area in transition, experiencing strip development of large new commercial establishments. The land is flat and open, suitable for such development, whereas immediately to the south of the interchange the land becomes more wooded and hilly, and is residential in character. North of the second railroad tracks the zoning changes from commercial to residential on the west side of the street and village commercial on the east. Traffic patterns reveal three times more traffic traveling north on Route 5 from the interchange, through the Broad Street area, than traveling south. Moreover, much of the northbound traffic turns off of Route 5 onto Center and South streets, just north of the second railroad tracks, to avoid the downtown traffic. Commercial establishments in the downtown district are also older and smaller than in the Broad Street area, with more limited parking space.

¶ 5. Based on this information, the Town determined that underlying land values for the forty-five commercial properties in the Broad Street district should be reassessed to closer approximate the statutory goal of fair market value. See 32 V.S.A. § 3481(1) (defining appraisal value to mean "the estimated fair market value"). To accomplish this goal, the Town established a tiered land-valuation system for the district, starting with a base value of $120,000 per acre for the first two acres, with adjustments based on factors such as access to Route 5 and proximity to the I-91 interchange, and $10,000 for each additional acre. The prior land schedule, which continued to apply to the 115 commercial properties not within the Broad Street district, was generally $10,000 for the first acre, with gradual decreases for each additional acre. The Town applied the reassessment to all properties within the district with frontage on Route 5 except for three small adjoining lots containing residences, citing their small size, residential character, and a recent sale for $35,000 of one of the lots, well below assessed value. The Town excluded all lots without frontage on Route 5 except for two properties, the Wayside Furniture Store and the Murphy/Bean property, which were reassessed based on their close alignment with two other commercial establishments on Route 5 and their proximity to the interstate.

¶ 6. Plaintiffs, nineteen property owners within the district, unsuccessfully appealed their 2000 listed values to the board of civil authority, and thereafter filed this lawsuit challenging the reassessment in the superior court. Based on a limited set of stipulated facts, the court initially ruled that the reassessment of properties within a specific area of the Town did not per se violate the Proportional Contribution Clause of the Vermont Constitution. Following an evidentiary hearing, the court issued a second decision, finding that the Broad Street district is an area distinct from other portions of the Town and that its unique character showed that the selective reassessment had a rational basis and was not arbitrary or discriminatory. The court further concluded that the exclusion of the three small residential lots adjacent to Route 5 was not rationally supported, and that the exclusion of two other lots without Route 5 frontage, the Northern Lumber property and a fabric shop, was unsupported in light of the inclusion of the Wayside and Murphy/Bean lots. The court invited the parties to submit memoranda addressing the effect of its finding that certain exclusions from the reassessment were irrational, and issued a subsequent amended decision concluding that the exclusions were not so significant as to undermine

the rationality of the district as a whole or to invalidate the reassessment. Plaintiffs' subsequent motion to alter or amend the judgment was denied. This appeal followed.

¶ 7. Plaintiffs renew their claim, raised and rejected below, that the selective reassessment of properties within the Broad Street district violates chapter I, article 9 of the Vermont Constitution, the Proportional Contribution Clause, Vt. Const. ch. I, art. 9, which requires that each member of society "contribute the member's proportion towards the expence of" government. As we have explained, the clause "imposes no greater restriction on governmental action than the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *USGen New England, Inc. v. Town of Rockingham*, 2003 VT 102, ¶ 15, 176 Vt. 104, 838 A.2d 927. Thus, we have held that "the test of validity of governmental action under the clause is 'the rational basis test used for federal equal protection analysis.'" *Id.* (quoting *Alexander v. Town of Barton*, 152 Vt. 148, 157, 565 A.2d 1294, 1299 (1989)). Under this test, governmental action is unconstitutional only if it treats similar persons differently for arbitrary and capricious reasons. *Alexander*, 152 Vt. at 157, 565 A.2d at 1299. The burden of demonstrating unconstitutionality rests upon the contesting taxpayer. *In re Estate of Eddy*, 135 Vt. 468, 473, 380 A.2d 530, 534 (1977).

¶ 8. Like the court below, we find that our decision in *Alexander* is largely controlling here. The taxpayer challenge there was to a "rolling reappraisal" method of assessment in which the town would reassess every two years only that class of property determined by the Tax Department to have the lowest ratio of listed value to fair market value; the specific class of property at issue in *Alexander* was vacation properties. 152 Vt. at 149-50, 565 A.2d at 1295. The taxpayers argued that the partial reassessment scheme violated the Proportional Contribution Clause, but we rejected the claim, concluding that the town's actions had a rational basis and served a legitimate purpose — "keeping appraisals as current as possible within the resources available by attacking the worst underassessment problem areas." *Id.* at 157-58, 565 A.2d at 1299.

¶ 9. Although here the Town chose to focus on a discrete geographic area experiencing rapid commercial growth and a concomitant appreciation in value rather than a discrete class of property, the principle permitting a town to "attack[] the worst underassessment problem areas" through selective reassessment applies with equal force. *Id.*; see also *Riha Farms, Inc. v. County of Sarpy*, 322 N.W.2d 797, 801 (Neb. 1982) (taxing authorities are not "required to reassess all classes of property at the same time"); *Regent Care Ctr., Inc. v. Hackensack City*, 828 A.2d 332, 334 (N.J. Super. Ct. App. Div. 2003) (city's reassessment of select group of commercial properties that had "dramatically increased in value" under "assessment maintenance program" was not arbitrary or discriminatory). Plaintiffs assert that *Alexander* is critically distinguishable in two respects, but the claim is unpersuasive. First, plaintiffs note that the reappraisal in *Alexander* was conducted pursuant to a "rolling" or cyclical reassessment scheme, suggesting that it was upheld only because it was part of a larger comprehensive reappraisal effort. Our decision did not, however, turn on this basis. Indeed, we recognized that "[w]hile the plan adopted by the Town may never reappraise all property, it is aimed at the property with the greatest discrepancy between fair market value and listed value," and we found it reasonable on that basis alone. 152 Vt. at 160, 565 A.2d at 1301.

¶ 10. Second, while plaintiffs concede the "theoretical" possibility of a discrete geographical reassessment, they argue that the Broad Street district is not "truly discrete and isolated" from other areas of the Town for purposes of applying differential tax treatment. The court's factual findings, however, must be upheld unless clearly erroneous. *Creed v. Clogston,* 2004 VT 34, ¶ 18, 176 Vt. 436, 852 A.2d 577. Plaintiffs have not demonstrated that the court clearly erred in finding the district to be a distinct geographic and commercial area of strip development experiencing a dramatic appreciation in property value, with a resulting ratio of grand list to fair market value of only 13% as compared to the Town's overall ratio of 89%. Although plaintiffs introduced some evidence that properties north and south of the district had also appreciated in value, there was no evidence that sales outside the district systematically demonstrated the same dramatic level of underassessment, and the court was not obligated to make findings on the absence of such evidence. Although there was, as plaintiffs note, evidence that one half-acre property in the downtown commercial district had sold in 1994 for $125,000, the evidence also showed, and the court reasonably found, that the price was unusually high because it was the last open lot in the village district. We thus discern no basis to disturb the court's findings and conclusions concerning the distinctive nature of the Broad Street district or the reasonableness of the district reassessment.

¶ 11. Plaintiffs also contend the trial court erred in failing to invalidate the reassessment district based on its finding that the Town's decision to exclude several properties from the reappraisal lacked a rational basis. The United States Supreme Court has instructed, however, that "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams,* 397 U.S. 471, 485 (1970); accord *Mass. Bd. of Ret. v. Murgia,* 427 U.S. 307, 316 (1976). Thus, "[e]ven if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn ... [is] imperfect, it is nevertheless the rule that in a case like this perfection is by no means required." *Vance v. Bradley,* 440 U.S. 93, 108 (1979) (quotations omitted). Applying these principles, it is clear that despite the trial court's finding that the reassessment was somewhat underinclusive (in that it excluded certain properties which the court found logically should have been included), it properly declined to invalidate the overall reassessment of the Broad Street district on that basis.

*Affirmed.*