2005 VT 112

## M.T. Associates v. Town of Randolph

[889 A.2d 740]

No. 04-259

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed October 7, 2005

*Allan R. Keyes* of *Ryan, Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellee.

*Richard I. Burstein* of *Law Offices of Richard I. Burstein*, Randolph, for Defendant-Appellant.

¶ 1. **Dooley, J.** The Town of Randolph appeals from a superior court decision which found it had violated the state and federal constitution by selectively reassessing taxpayer M.T. Associates' property. The superior court concluded that the Town completed an unconstitutional partial reappraisal and, consequently, reset the value of taxpayer's property at its assessed value for the previous year. We conclude that no unconstitutional reappraisal occurred, and that the Town's decision to correct an error by reappraising only mini-marts was within its power. Therefore, we reverse the superior court and affirm the assessed value of $496,000 as set by the listers.

¶ 2. In 1998, taxpayer purchased property in Randolph and, in 2000, tore down the existing building and constructed a new convenience store with gasoline pumps, commonly called a mini-mart. The listers reassessed the property at $411,300 in light of the new construction. Taxpayer grieved the 2000 assessment on the grounds that the value

was higher than that of other mini-marts in town. The Town reviewed the values of other mini-marts, observed that it appeared that all mini-marts were assessed below fair market value, and concluded that taxpayer's property was set disproportionately higher than comparable mini-marts. Consequently, for 2000 the Town temporarily lowered the assessed value of taxpayer's property to $336,300. In a note attached to the grievance decision, the lister stated: "[T]his is a one-year adjustment. We will be looking at all minimart/gas station type properties in Randolph again next year."

¶ 3. In 2001, the listers reviewed the assessments of all five mini-marts in the Town and found that they were assessed at between fifty-three percent and seventy percent of fair market value. To correct what they observed as an underassessment of all these properties, the listers raised all the values. Taxpayer's assessed value increased to $560,000. Taxpayer and three other mini-mart owners either grieved their assessments or presented additional information. Listers then lowered all four values, which reduced the assessed value of taxpayer's property to $496,000.

¶ 4. Of the five reappraised mini-marts, only taxpayer appealed the reassessed value to the board of civil authority. When that proved unsuccessful, taxpayer filed an appeal in superior court. Taxpayer did not contest the Town's determination of the fair market value of its property, nor did it claim that the Town's actions violated state law other than the state constitution. At trial, the parties agreed on a statement of facts, and each submitted testimony from an assessor. The parties agreed that Randolph last reappraised its property in 1994, and in 2001, at the time of the appeal, overall property values in the Town were at 104.36% of fair market value and commercial properties were at 106.12%. The Town concedes that it is not conducting a "rolling reappraisal" — that is, it is not intentionally reappraising a class of property each year to move closer to uniform assessment at fair market value. It has not looked comprehensively at the values of the 156 commercial properties in the Town. It has not reassessed any group of properties other than mini-marts. No townwide reappraisal is scheduled. Generally, the listers reassess a property at fair market value if "there was a new construction or a fire cr a building addition to any real property of any category."

¶ 5. The trial court issued an oral order, concluding that the Town's reappraisal of only mini-marts was unconstitutional and consequently that the listed value of taxpayer's property should be reset to the previous year's value. In its written reconsideration decision, the court

explained that where the Town reappraised only 3.2% of the commercial properties within the Town, was not selectively reappraising in the context of a "rolling reappraisal," and did not intend to reappraise other commercial properties, the reappraisal scheme violated both Chapter I, Article 9 of the Vermont Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "in bearing unequally on properties *within* the same class."

¶ 6. We will reverse a trial court's factual findings only if they are clearly erroneous. *Williams v. Town of Lyndon*, 2005 VT 27, ¶ 10, 178 Vt. 507, 872 A.2d 341 (mem.). Our review of legal issues is nondeferential and plenary. *Searles v. Agency of Transp.*, 171 Vt. 562, 562, 762 A.2d 812, 813 (2000) (mem.).

¶ 7. On appeal, the Town argues that its reappraisal of mini-marts was appropriate to keep assessed values near fair market value between reappraisals of all property within the Town. Taxpayer, in response, urges us to adopt the rationale of the superior court. It asserts that the Town violated the Proportional Contribution Clause of the Vermont Constitution by selectively reappraising only mini-marts and not all commercial properties. That clause states that every member of society "is bound to contribute the member's proportion towards the expence of [society's] protection." Vt. Const. ch. I, art. 9.

¶ 8. We begin with a discussion of the statutory appraisal scheme because under the constitutional arguments lies a dispute about how a town should approach its listing responsibilities. Under our statutory scheme, listers are required to appraise property at fair market value. See 32 V.S.A. §§ 3431, 3481(1)-(2). As we have observed in other decisions, however, universal appraisal at fair market value is not achievable in most years. Thus, the Legislature has provided that towns must conduct a complete reappraisal if the percentage of deviation between the aggregate price of all properties sold in a year and their aggregate listed value falls below eighty percent or if the coefficient of dispersion of this deviation is above twenty. *Id.* §§ 4041a(b), 5401(3). The deviation percentage measures the ratio of listed values to actual sale prices and indicates whether properties have appreciated or depreciated. The coefficient of dispersion "measures the degree to which the ratio of listed to fair market value of individual properties deviates from the median ratio for the area." *Williams*, 2005 VT 27, ¶ 3; see also 32 V.S.A. § 5401(1). Beyond these specific mandates, towns may reappraise as long as the result is fair

and equitable, with the overall goal to value properties at 100% of market value.

¶ 9. The stipulated facts indicate that the listers generally use a recent activity approach, reassessing properties only when an event occurs — like construction of a new building — that has a substantial impact on fair market value. Under this approach, the appraisals of other properties remain in place until a new general reappraisal. Taxpayer's expert witness, the assessor for the City of Rutland, testified that a different approach was proper. The witness testified that the Town should assess property at its value as of the last general reappraisal. Thus, he testified that the listers should have assessed taxpayer's property at the value it would have had in 1994 if the new construction had occurred in that year. He further testified that the listers did exactly that in 2000, after taxpayer's grievance, when the listers lowered the initial assessment of taxpayer's mini-mart to a value comparable to other mini-marts.

¶ 10. Although the validity of the approach urged by taxpayer was not directly before us, we criticized it extensively in *Knollwood Building Condominiums v. Town of Rutland*, 166 Vt. 529, 532, 540, 543-45, 699 A.2d 31, 34, 39, 41-42 (1997). We find it difficult to square this approach with the statutory command that listers appraise at current fair market value. Here, taxpayer's approach would be used to create an artificial value for a building that did not exist on the date for which it would be appraised. Overall, taxpayer's approach produces different property tax rates for different classes of property without statutory authority for such a system. See *id.* at 543-44, 699 A.2d at 41.

¶ 11. Thus, we do not believe that the Town was in any sense required in 2000 to lower the appraisal of taxpayer's mini-mart to make it comparable to that of other mini-marts. Indeed, that action was not consistent with its general approach to assessing new construction. Thus, we see no reason why, under Vermont statutory law, the listers could not correct their deviation from their listing practices by raising taxpayer's assessment to fair market value.

¶ 12. This leads us to the constitutional question. The superior court found the Town's assessment inconsistent with Chapter I, Article 9, the Proportional Contribution Clause, of the Vermont Constitution. In the tax context, this provision places no greater restrictions on government action than the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Alexander v. Town of Barton*, 152 Vt. 148, 157, 565 A.2d 1294, 1299 (1989). Therefore, we review the Town's action under a rational basis test; "governmental action is

unconstitutional only if it treats similar persons differently for arbitrary and capricious reasons." *Williams*, 2005 VT 27, ¶ 7. We will uphold the classification if we can conceive of any reasonable policy or purpose for it. *Hoffer v. Dep't of Taxes*, 2004 VT 86, ¶ 10, 177 Vt. 537, 861 A.2d 1085 (mem.). Taxpayer bears the burden of demonstrating that a town's method was unconstitutional. *Williams*, 2005 VT 27, ¶ 7.

¶ 13. To comply with the Proportional Contribution Clause, a town must appraise its property at a uniform rate. *Kruse v. Town of Westford*, 145 Vt. 368, 375, 488 A.2d 770, 774-75 (1985). Consequently, if a taxpayer demonstrates that the property at issue is assessed at a higher percentage of fair market value than comparable properties, the court must list the taxpayer's property at a corresponding value. *Heindel v. Town of Grafton*, 140 Vt. 147, 149, 435 A.2d 695, 696 (1981). This does not mean that a town may not reassess certain properties, but the effect must be uniform. *Id.*

¶ 14. In this case, taxpayer concedes that $496,000 accurately represents the fair market value of its property, but argues that the Town unlawfully discriminated by selectively reappraising only 5 of the 156 properties in the commercial class. It argues that the Town can change a preexisting appraisal only if it reappraises all properties in the Town or it conducts a "rolling reappraisal" under which it reappraises all properties within a class. It finds this rule in our decision in *Alexander*, 152 Vt. at 156-57, 565 A.2d at 1299.

¶ 15. In *Alexander*, the taxpayer argued that the town's reappraisal method was unconstitutional because the town appraised only certain categories of property each year — those with the greatest degree of deviation from fair market value. *Id.* Applying a rational basis test, we rejected taxpayer's argument, noting that the town did not intentionally discriminate and that the town's method was rational and served a legitimate purpose — to keep appraisals as current as possible with limited resources. *Id.* at 157-58, 565 A.2d at 1299.

¶ 16. The overall message of *Alexander* is not, as taxpayer asserts, that the only constitutionally-acceptable reappraisal methods are total reappraisal and rolling reappraisal. Indeed, we recently rejected that interpretation in *Williams*, 2005 VT 27, ¶ 9. There, the Town of Lyndon chose to reappraise a group of commercial properties located in a specific geographic area because sale prices for properties in that area were much greater than listed values. Some property owners challenged the town's method, arguing that such a selective reassessment violated the Proportional Contribution Clause. Relying on *Alexander*, we applied a rational basis test and concluded that the

town's decision to reappraise a unique geographic area was rational and served the legitimate purpose of addressing the most under-assessed areas. *Id.* We specifically held that *Alexander* did not turn on whether the appraisal in issue "was conducted pursuant to a 'rolling' or cyclical reassessment scheme." *Id.*

¶ 17. Thus, the determinative issue is whether there is a rational basis for the distinctions the Town has drawn in assessing taxpayer's property. We conclude that there are two rational bases for its decision. The first is the basis found for the town's action in *Alexander* — "keeping appraisals as current as possible within the resources available by attacking the worst underassessment problem areas." 152 Vt. at 157-58, 565 A.2d at 1299. That was also the rationale for reassessing properties within a specific geographic area in *Williams*, and we upheld the selective reassessment in that case. 2005 VT 27, ¶ 9.

¶ 18. We find the analysis contained in *Regent Care Center, Inc. v. Hackensack City*, 828 A.2d 332, 340-41 (N.J. Super. Ct. App. Div. 2003), particularly persuasive here. In that case, the assessor had reviewed the town's property and determined that 150 of the town's commercial properties were grossly underassessed. The nursing home was identified as one such property, and the assessor adjusted its value. The New Jersey Superior Court affirmed the assessment, recognizing that although assessors may not single out property for increased assessment, the assessors can make adjustments for legitimate reasons. *Id.* at 340. The court emphasized that assessors may properly change assessment values between full-town appraisals if a legitimate nondiscriminatory reason exists and if equitably done to all similarly-situated properties. *Id.* at 340-41; see *Security Props. v. Ariz. Dep't of Prop. Valuation*, 537 P.2d 924, 927 (Ariz. 1975) (affirming increased assessment for high-rise buildings where undertaken to correct acknowledged discrepancies in valuation).

¶ 19. Such guidelines were followed by the Town here. In general, the Town's assessments of commercial properties are at or above fair market value, so there is no impetus for a general reappraisal or a reappraisal of commercial properties. At the same time, taxpayer's grievance of its 2000 assessment demonstrated the underassessment of all mini-marts. In response, the Town conducted a study, found that mini-marts were underassessed, and reappraised them to fulfill the statutory goal of listing property at fair market value. This action reduced inequity in assessments in the Town. As explained above, both *Alexander* and *Williams* support a town's ability to reappraise

underassessed property without completing a town-wide reassessment. The Town had a rational basis for targeting mini-marts because it knew that the listed values of mini-marts were much lower than fair market value, and it had a legitimate purpose in reappraising them — to bring the values closer to fair market value.

¶ 20. Although the trial court acknowledged that the Town acted in good faith to correct the values of the mini-marts, the court's main criticism of the Town's reappraisal was that it did not examine all other types of commercial property for similarly unexpected gains in value. The trial court made a factual finding that mini-marts were not a discrete class, and therefore concluded that the Town's decision to target only mini-marts was discriminatory. In essence, the court held that the Town must reappraise all commercial properties or none at all.

¶ 21. However desirable the superior court's approach may be, we cannot conclude that it is commanded by the constitution. To succeed on appeal, the Town need demonstrate only that there was a reasonable basis for the disparate treatment — reassessing only mini-marts and not other commercial properties. *Williams*, 2005 VT 27, ¶ 7; see *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (under the Equal Protection Clause, the issue is whether distinctions rationally further a legitimate state interest; the requirements of the clause are met if there is "a plausible policy reason for the classification"). Here, the aggregate data show that there is no significant problem in the valuation of commercial properties as a whole. The Town, like the Legislature, "may address a perceived evil one step at a time and is not required to take an all or nothing approach." *Schievella v. Dep't of Taxes*, 171 Vt. 591, 593, 765 A.2d 479, 482 (2000) (mem.). The Town has demonstrated a rational basis for reassessing mini-marts without reassessing other properties.

¶ 22. There is a second basis for the Town's action specifically applicable to taxpayer's property. In 2000, the Town made only a temporary decision concerning the value of taxpayer's property, returning in 2001 to its policy of appraising new construction at fair market value when it could equitably apply that policy to all mini-marts. Even if the Town's actions were invalid with respect to other mini-marts, it was simply correcting its inaccurate action with respect to taxpayer. We conclude that correcting a mistake is a rational basis for its decision to appraise taxpayer's property at fair market value in 2001.

¶ 23. For related reasons, we upheld a legislative freeze on the assessed value of certain hydroelectric plants in *USGen New England, Inc. v. Town of Rockingham*, 2003 VT 102, 176 Vt. 104, 833 A.2d 927. We found a rational basis in "ensuring temporary stability of tax revenues in a number of small Vermont towns, in the face of difficulties in determining the fair market value of hydroelectric facilities brought about by the 'changing and deregulated utility market.'" *Id.* ¶ 20 (citation omitted). Here, the Town's action was induced, in part, by uncertainties about the appropriate fair market value of mini-marts, and it took a year to study the valuation issues and determine a fair value for all mini-marts. Without running afoul of the constitution, the Town can make the necessary adjustments to correct its initial valuation.

¶ 24. We do not read taxpayer's challenge as broadly attacking the Town's use of a trigger, here new construction, to commence appraisal at fair market value. Certainly, the ability of a taxpayer to make such a challenge is undercut by the United States Supreme Court decision in *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992), as well as by the requirement that listed values be equalized in relation to comparable properties, 32 V.S.A. § 4467. See generally M. Morrow, Comment, *Twenty-Five Years of Debate: Is Acquisition-Value Property Taxation Constitutional? Is It Fair? Is It Good Policy?*, 53 Emory L.J. 587 (2004). In any event, we do not consider this potential issue.

¶ 25. Having concluded that the Town's reappraisal of mini-marts was constitutional, we need not address the Town's contention that the trial court's order setting taxpayer's listed value at $336,300 was erroneous.

*Reversed.*