2009 VT 65

**TOWN OF CASTLETON v. Robert PARENTO**

[988 A.2d 158]

No. 08-203

¶ 1. October 13, 2009. Taxpayer appeals from a decision of the Vermont State Appraiser upholding the Town of Castleton's reappraisal of his property. Taxpayer contends that the Town selectively reappraised his property in violation of the Proportional Contribution Clause of Chapter I, Article 9 of the Vermont Constitution. We agree and reverse.

¶ 2. The facts revealed by the record are as follows (additional facts will be set forth where pertinent). Taxpayer owns two parcels of land in Castleton, Vermont in a neighborhood bordering Lake Bomoseen. The first parcel (House Parcel) consists of 3.35 acres of land on which there is an historic residence built around 1850.[1] The House Parcel is not lakefront. The second parcel (Lake Parcel) consists of 0.19 acres of undeveloped land on Lake Bomoseen. The parcels are in close proximity but are not contiguous; the Lake Parcel is not directly across from the

House Parcel, and Johnson Spooner Road separates them. Current zoning regulations prohibit development of the Lake Parcel.

¶ 3. The Town conducted a complete town-wide reappraisal in 2004. Pursuant to the Town's 2004 reappraisal, the Board of Listers assessed the value of the House Parcel at $193,600. The Lake Parcel was listed at $17,000. Taxpayer unsuccessfully grieved the listers' assessment of the House Parcel and thereafter appealed to the Town of Castleton Board of Civil Authority (BCA) pursuant to 32 V.S.A. § 4404. The BCA disagreed with the value set by the listers and ascribed a new value to the land, $58,100. The BCA reasoned that the listers had incorrectly classified the House Parcel as "lake access." On appeal to the appraiser, the Town's position prevailed. The appraiser affirmed the listers' assessment of the land at $193,600 for tax year 2004.

¶ 4. The value of the House Parcel remained $193,600 for tax year 2005 in conformity with § 4468, which declares that, absent certain exceptions, including any town-wide reappraisal, values set by the appraiser shall remain fixed for two years.[2] The value of the Lake Parcel

---

[2] Section 4468 reads, in pertinent part:

> The appraisal so fixed by the [appraiser] . . . shall become the basis for the grand list of the taxpayer for the year in which the appeal is taken and . . . for the two next ensuing years . . . . The appraisal, however, may be changed in the ensuing two years if the taxpayer's property is materially altered, changed, damaged or if the municipality, city or town in which it is located has undergone a complete revaluation of all taxable real estate.

---

[1] The parties do not dispute the value of the improvements on the House Parcel; therefore, all references herein to the value of the House Parcel refer only to the value of the land.

likewise remained the same as tax year 2004, $17,000.

¶ 5. For tax year 2006, the Town conducted a town-wide statistical reappraisal, and, pursuant to this reappraisal, the listers increased the assessed value of the House Parcel to $221,500 and the Lake Parcel to $19,400. Once again, taxpayer unsuccessfully grieved the listers' valuation of the House Parcel and appealed to the BCA. In September 2006, the BCA rejected the listers' valuation and set the value of the House Parcel at $66,915. The BCA reasoned that the listers had erred in concluding that the House Parcel should be deemed lake access due to taxpayer's ownership of the Lake Parcel. According to the BCA's decision, "[b]oth parcels need to be treated independently of each other." The Town did not appeal the BCA's September 2006 decision. Therefore, the listed value of the House Parcel became $66,915 for tax year 2006.

¶ 6. Notwithstanding the BCA's 2006 ruling, in 2007, the Town listers changed the assessed values of the two parcels. They valued the House Parcel at $221,500 and the Lake Parcel at $54,400. Having unsuccessfully grieved the listers' latest decision, taxpayer yet again appealed to the BCA. The BCA disagreed with the value ascribed to the parcels by the listers. It reduced the value of the House Parcel to $91,465 and set the value of the Lake Parcel at $19,400. Once again, the BCA concluded that the House Parcel should not be deemed lake access.

¶ 7. Subsequently, the Town appealed the BCA's decision to the state appraiser. In written findings dated March 28, 2008, the appraiser upheld in part the BCA's valuation of the parcels. The appraiser set the value of the Lake Parcel at $19,400 and assessed the House Parcel at $221,500. The appraiser only summarily

---

32 V.S.A. § 4468.

addressed taxpayer's argument that the Town selectively reappraised his property. Although the appraiser deemed the Town's reassessment of the property to be "questionable public relations," he concluded that the Town's actions were "consistent and uniform" with respect to "[c]omparable properties." This appeal followed.

¶ 8. We note at the outset that the Town concedes that the listed value of the Lake Parcel should be $19,400. The parties contest, however, the value of the House Parcel.

¶ 9. Taxpayer contends that the Town selectively reassessed his property in violation of the Proportional Contribution Clause.[3] Taxpayer argues that the Town failed to apply uniform standards in appraising similarly situated properties pursuant to its purportedly broad-based reassessment of lake-access parcels in 2007 and that the appraiser erred in concluding otherwise.[4]

¶ 10. In this context, we apply a rational basis test to assess the constitutionality of the Town's actions. *M.T. Assocs. v. Town of Randolph*, 2005 VT 112, ¶ 12, 179 Vt. 81, 889 A.2d 740; *Williams v. Town of Lyndon*, 2005 VT 27, ¶ 7, 178 Vt. 507, 872 A.2d 341 (mem.); *Alexander v. Town of Barton*, 152 Vt. 148, 157, 565 A.2d 1294, 1299 (1989). Accordingly, we will not uphold the Town's reappraisal if taxpayer demonstrates that the Town arbitrarily

---

[3] The Proportional Contribution Clause provides in relevant part: "That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute the member's proportion towards the expence of that protection." Vt. Const. ch. I, art. 9.

[4] Taxpayer raised additional arguments on appeal. We need not address these arguments, however, because our resolution of taxpayer's selective reappraisal claim is dispositive.

treated similarly situated taxpayers differently. See *M.T. Assocs.*, 2005 VT 112, ¶ 12 (articulating the rational basis test thus: "governmental action is unconstitutional only if it treats similar persons differently for arbitrary and capricious reasons" (quotation omitted)). Conversely, we will uphold the reappraisal "if we can conceive of any reasonable policy or purpose for it," *id.*, and if it treated similarly situated taxpayers equitably, see *id.*

¶ 11. We have applied this rational basis test on several occasions; each of these times we upheld the reappraisal in question because we could discern from the record that the town selected a group of properties based on some reasonable and legitimate standard and then uniformly reassessed them. See *M.T. Assocs.*, 2005 VT 112, ¶ 21 (mini-marts); *Williams*, 2005 VT 27, ¶ 9 (properties deemed within "a discrete geographic area experiencing rapid commercial growth"); *Alexander*, 152 Vt. at 149, 157-58, 565 A.2d at 1295, 1299 ("vacation properties of six acres or less"); cf. *In re Property of One Church St.*, 152 Vt. 260, 266, 565 A.2d 1349, 1352 (1989) ("Our precedents establish two fundamental requirements for the valid imposition of taxes in Vermont: first, that any . . . classification of taxpayers bear a reasonable relation to the purpose for which it is established; and second, that the classification scheme be fairly and equitably applied among like classes of taxpayers."). In *Alexander*, the Town of Barton's plan to cyclically reassess those classes of properties indicated as chronically underassessed by a state study survived rational basis scrutiny due in no small part to the indication in the record that the reappraisal of any class of properties designated as underassessed by the study was carried out systematically and uniformly. See 152 Vt. at 158-59, 565 A.2d at 1300. Our most recent case addressing the constitutionality of a selective reappraisal, *M.T. Assocs.*, concerned

a situation where the Town of Randolph conducted a study indicating that its commercial properties as a whole were properly valued, but its mini-marts were undervalued. To correct this discrepancy, the town reassessed all five of its mini-marts. In upholding this reappraisal, we found particularly persuasive the analysis contained in *Regent Care Center, Inc. v. Hackensack City*, 828 A.2d 332 (N.J. Super. Ct. App. Div. 2003). *M.T. Assocs.*, 2005 VT 112, ¶ 18. Specifically, we approved of the court's statement in *Regent Care* that listers may "change assessment values between full-town appraisals if a legitimate nondiscriminatory reason exists *and* if equitably done to all similarly-situated properties." *Id.* ¶ 18 (citing *Regent Care*, 828 A.2d at 340-41) (emphasis added). Thus, in *M.T. Assocs.*, we concluded that the town need not reassess all commercial properties to comport with the Proportional Contribution Clause. 2005 VT 112, ¶ 21. It was rational for the town to define and then reassess a narrower class of properties, mini-marts, to "keep[] appraisals as current as possible within the resources available by attacking the worst underassessment problem areas." *Id.* ¶ 17 (quotation omitted).

¶ 12. Also instructive is *Williams*, a case in which we upheld the Town of Lyndon's reappraisal of purportedly undervalued commercial properties "located within a specific geographic area of [Lyndon] known as the Broad Street district" against a charge that the reassessment violated the Proportional Contribution Clause. 2005 VT 27, ¶ 1. In *Williams*, the record indicated that Lyndon's evaluation of several years of purchase-price data led it to conclude that commercial properties in the Broad Street district were listed substantially below fair market value, unlike properties in the rest of Lyndon, which were generally listed near market value. The detailed record also indicated a cohesive rationale supporting

Lyndon's decisions regarding (1) the boundaries of the Broad Street district and (2) its disparate treatment for reassessment purposes. Moreover, the Town of Lyndon demonstrated that it approached its reappraisal of the Broad Street district systematically, establishing a tiered land-valuation system that it applied consistently to similarly situated properties considered part of the district. Based on this record, we could not conclude that Lyndon acted unconstitutionally. *Id.* ¶¶ 1, 9-11.

¶ 13. In this case, it appears that the Town interpreted the 2006 statistical reappraisal as identifying a variety of undervalued properties. Of particular concern to the Town were nonlakefront homesites in lake neighborhoods, the owners of which also owned separate, undevelopable lakefront parcels. The Town asserts that these properties sell together; therefore, to achieve the proper valuation, either the main parcel should be deemed lake access, increasing its listed value to reflect the value added by the co-owned lakefront parcel, or the listed value of the lakefront parcel should be increased by a flat rate of $35,000.[5] At a hearing conducted by the appraiser, the Town acknowledged that there must be hundreds of property owners who own a small lakefront parcel in addition to a noncontiguous, but nearby, homesite.

¶ 14. Assuming, for the sake of argument, that the central premise underlying the Town's identification of these properties for reassessment in 2007 was rational — namely, that these separate, noncontiguous properties must always sell together and therefore should be consid-

ered as one more valuable property for tax purposes — we still cannot uphold the reappraisal. Not only must there be a rational basis for identifying a subset of properties to be reassessed, but the record must also demonstrate that the reassessment was effectuated consistently with respect to these properties. See *M.T. Assocs.*, 2005 VT 112, ¶ 18; cf. *One Church St.*, 152 Vt. at 268, 565 A.2d at 1353 (stating that "once fair classifications have been established, taxpayers *within a given classification* must be treated alike"). Based on the sparse facts pertinent to this issue present in this record, we cannot agree that the Town's reappraisal was carried out consistently with respect to the subset of the Town's properties it chose to reassess.

¶ 15. Pursuant to § 4467, an appeal before the appraiser proceeds de novo, and a town's appraisal enjoys a presumption of validity, see *Woolen Mill Assocs. v. City of Winooski*, 162 Vt. 461, 462, 648 A.2d 860, 862 (1994), rebuttable by the taxpayer upon a showing, via credible evidence, that the valuation was arrived at arbitrarily, *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 568, 556 A.2d 64, 66 (1988), or the reappraisal lacked uniformity, *Schweizer v. Town of Pomfret*, 134 Vt. 436, 438, 365 A.2d 134, 135 (1976). Should the taxpayer rebut the presumption, he nevertheless retains the burden of persuasion with respect to proving, for example, that the reappraisal was not carried out uniformly. See *Rutland Country Club, Inc. v. City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981) (explaining burden-shifting framework). This does not mean, however, that at such a hearing the town bears no responsibility to put forth evidence. *Id.* Instead, in order to prevail, it must produce evidence justifying its appraisal. *Id.*

---

[5] As noted previously, the parties agree that the value of the Lake Parcel should be $19,400. We do not address, therefore, the merits of the $35,000 flat rate, a figure which the Town appears to have derived using "equity" instead of, for example, recent comparable sales.

¶ 16. The record of the hearing before the appraiser, imperfect as it may be,[6] clearly indicates that taxpayer rebutted the presumption of validity by bringing forth evidence demonstrating that the Town did not reassess the homesite and lakefront parcels of numerous other similarly situated property owners, including those whose properties abutted or were in close proximity to taxpayer's, rendering the reappraisal constitutionally suspect. At this juncture, the Town had to come forth with evidence justifying this disparity. It did not. The Town's lister merely stated that approximately thirty-five similarly situated properties were reassessed, including taxpayer's, but offered no other evidence to support this assertion. It is not necessarily clear, on this record, that any other properties, aside from taxpayer's, were reassessed. Moreover, on cross-examination, the lister's responses to taxpayer's questions on the issue of selective reappraisal were wholly inadequate to support the appraiser's finding that the reappraisal was effectuated uniformly, as evidenced by the following exchange between taxpayer's lawyer and one of the Town's listers at the hearing:[7]

Lawyer: Can you explain to me why that [abutting lakefront] parcel would be assessed at $19,400, but [taxpayer's] is assessed at $54,000?

Lister: Because there was an issue as to where the value was going to lie. If it's not going to be

on the house property then it has to be on the lake property. . . . [I]t had to be on one or the other.

Lawyer: And with [taxpayer] you did it on both?

Lister: To see which way the BCA was going to decide. We sat right there in the hearings and said, if you're going to put the value on the house, we request you remove it from the lake. Obviously they didn't remove it from the lake, and that's why we continued on to the [appraisers], so they had a final decision as to where the value lies.

Lawyer: Okay. And [with respect to another taxpayer's] property, neither the .19-acre parcel or his 2.5 acres were reassessed at the same time [taxpayer's] was, even though they both have lake access, they both have the .19 acres across the road, and they abut each other; you did not reassess [that taxpayer's] property?

Lister: We did not put the $35,000 on his lake piece.

Lawyer: All right. I direct your attention to [yet another taxpayer's] property. Where

---

[6] For example, the transcript for the hearing is incomplete. Neither party, however, raised this as an issue on appeal.

[7] Additionally, in its brief on appeal, the Town simply reiterated the summary conclusion of the appraiser.

is that located in relation to taxpayer's property?

Lister: Within the same area.

Lawyer: Okay. Would you agree with me that property also has a parcel of land, .19 [acres], exactly the same as [taxpayer's] . . . ?

Lister: Yes.

Lawyer: And that parcel is assessed at $19,400?

Lister: That's right. The value is on the house.

Lawyer: Okay. And would you agree with me that [this taxpayer's] 1.5 acres and .19 acres were not reassessed although they are located in the same vicinity, and are almost identical properties to [taxpayer's]?

Lister: Because they were not ones that were under argument as to where the value would lie, based on the BCA decision.

¶ 17. Indeed, the lister's responses support, and do not detract from, taxpayer's primary contention, leaving taxpayer's evidence essentially unrebutted. Once the Town identified a valuation discrepancy with respect to a discrete group of properties similar to taxpayer's, it was required to reassess these putatively undervalued properties uniformly. See, e.g., *M.T. Assocs.*, 2005 VT 112, ¶ 18. The foregoing exchange indicates that the Town did not. It could not definitively decide whether, with respect to similarly configured lake neighborhood properties, the value of the lakefront parcel should be increased by $35,000 or the homesite should be considered lake access. For some properties, it appears to have treated the homesite as lake access. For others, it claims to have added $35,000 to the lakefront parcel. With respect to taxpayer's properties, the Town applied the $35,000 to taxpayer's Lake Parcel *and* categorized the House Parcel as lake access in the hopes that the BCA and the appraiser would sort out the redundancy. The approach of the Town here stands in stark contrast to that taken by the Towns of Lyndon and Randolph in *Williams* and *M.T. Assocs.*, respectively. The Town inappropriately targeted these thirty-five-or-so properties out of many others that were similarly situated and reassessed just the ones it believed were undervalued — and inconsistently at that. We agree with taxpayer, therefore, that the Town's selective reassessment of his property cannot clear the comparatively low hurdle that is rational basis scrutiny.

¶ 18. Having concluded that the Town failed to demonstrate that its 2007 reappraisal was in accordance with constitutional requirements, the question remains: to what remedy is taxpayer entitled? Our prior cases regarding selective reappraisals have not reached the issue.

¶ 19. The chosen remedy must address the fundamental problem posed by the Town's selective reassessment — that taxpayer's property was subject to revaluation at all in 2007 when numerous other similarly situated properties inexplicably were not. Thus, it would be inappropriate to remand the matter to the appraiser for a hearing on the property's fair market value (FMV) for 2007. Such a ruling would, in effect, reward the Town for its unconstitutional reassessment of taxpayer's property by giving it another bite at the apple.

¶ 20. For his part, taxpayer asserts that the proper remedy is to reinstate, for tax year 2007, the 2006 grand list figure for the House Parcel, $66,915, the value set by the 2006 decision of the BCA.[8]

[8] Arguably, because the Town, and not taxpayer, appealed the BCA's 2007 valuation of the House Parcel at $91,465 and taxpayer did not cross-appeal, taxpayer's remedy here could be limited to reinstating this figure on a waiver theory. Such a view, however, misapprehends the nature of our property tax assessment appeal process and the record in this case. Appeals from a decision of a board of civil authority are heard de novo. 32 V.S.A. § 4467. See *Dewey v. Town of Waitsfield,* 2008 VT 41, ¶ 15, 184 Vt. 92, 956 A.2d 508 (noting that because the proceeding under § 4467 is heard de novo before the superior court "as though it had never been heard before," the town did not need to file a cross-appeal to advocate for a higher FMV than that found by the BCA (quotation omitted)). This situation stands in stark contrast to an appeal of a superior court decision in which the proceeding was not de novo. In that context, an appellee seeking to challenge aspects of the trial court's decision must file a timely cross-appeal. See *Huddleston v. Univ. of Vermont,* 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (concluding that party who failed to cross-appeal a trial court ruling could not raise contested issues to this Court); *Staruski v. Cont'l Tel. Co. of Vermont,* 154 Vt. 568, 571 n.3, 581 A.2d 266, 267 n.3 (1990) (noting that in situations where both parties seek appeal of a judgment from a non-de novo lower court decision, the failure to file a cross-appeal would leave the nonfiling party without a remedy if the first party were dismissed). Here, once the Town filed its appeal, there was no need for taxpayer to file a cross-appeal to "preserve" his assertion — which has been consistent throughout — that the Town unconstitu-

¶ 21. We agree with taxpayer. This remedy is equitable and appropriate. It vindicates the constitutional obligation violated by the Town's selective reappraisal of the House Parcel by nullifying the improper valuation. In reinstating the 2006 grand list value for the House Parcel, we do no more than treat taxpayer the same as owners of similarly situated properties who were not reassessed for tax year 2007, a year for which the Town did not conduct a town-wide reappraisal. Thus, this remedy comports with the constitutional mandate to apply tax classifications "equitably to all within the class." *One Church St.,* 152 Vt. at 267, 565 A.2d at 1353.

¶ 22. Our decision is also in accordance with those of other state courts that have addressed the issue. For example, in *Picerne v. DiPrete,* the Supreme Court of Rhode Island upheld the Superior Court of Rhode Island's determination that the tax assessor, at the behest of the mayor of Cranston, illegally reassessed the taxpayers' properties. 428 A.2d 1074, 1078 (R.I. 1981). The court concluded that reassessing only "brick apartments with six or more units, rural properties in Western Cranston, and two utility companies" using "a new assessment formula" calculated to produce "just enough income to meet the city's projected revenue needs" was a violation of the Rhode Island Constitution's "fair-distribution clause," which is similar to Vermont's Proportional Contribution Clause, *One Church St.,* 152 Vt. at 269, 565 A.2d at 1354, and the federal constitution's Equal Protection Clause. *Picerne,* 428 A.2d at 1077-78. According to the Supreme Court of Rhode Island, the appropriate remedy for this unconstitutional reassessment was to ex-

tionally reappraised his property and that he is entitled to have the 2006 BCA valuation of the House Parcel reinstated. Thus, we are not persuaded to reinstate the 2007 valuation.

punge the offensive assessments from the tax rolls.[9] *Id.* at 1078-79. Additionally, in *Twp. of W. Milford v. Van Decker,* the Supreme Court of New Jersey held that the appropriate remedy for a selective reappraisal was "to strike the . . . assessment resulting from the selective practice and restore the [prior year's] assessed valuation." 576 A.2d 881, 887 (N.J. 1990). The *Van Decker* court so ruled after determining that selecting for reappraisal only those taxpayers that had purchased property during the tax year at issue amounted to "arbitrary intentional discrimination that is unconstitutional." *Id.* at 885.

¶ 23. Having determined on a final appeal on the merits that taxpayer is entitled to have his 2006 grand list figure reinstated, we further hold that, pursuant to 32 V.S.A. § 4468, this figure "shall become the basis for the grand list of . . . taxpayer . . . for the two next ensuing years." Such a conclusion is especially appropriate in this case. The purpose of § 4468 is "to prevent annual, unwarranted reappraisals and provide . . . stability following a taxpayer's appeal." *Shetland Props., Inc. v. Town of Poultney,* 145 Vt. 189, 194-95, 484 A.2d 929, 933 (1984). Here, taxpayer has successfully appealed the Town's selective reappraisal of his property, the culmination of several years of litigation regarding the appraisal of the House Parcel. A period of repose is in order.

*Reversed and remanded for entry of an order reinstating the 2006 BCA value for the House Parcel.*

---

[9] The court in *Picerne* also upheld an injunction "permanently enjoining the [city] from collecting taxes based on the[] reassessments." *Id.* at 1079. We do not adopt that portion of the court's remedy.